## Charles A. Stickney Company, Appellee, v. Sears, Roebuck & Company, Appellant.

### Gen. No. 17,514.

1. SALES—*when breach of condition in contract is waived.* In an action for stipulated damages on failure of defendant to carry out a contract for the purchase of engines, defendant waives a breach of the provision that plaintiffs would not sell to any other catalogue house by making no objection when plaintiff shows them the catalogue of another house in which the engines are listed.

2. DAMAGES—*when excessive.* In an action for stipulated damages on failure of defendant to carry out a contract for the purchase of engines the judgment being in excess of the amount claimed by plaintiffs in correspondence with defendants, will be reduced by remittitur.

Appeal from the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding. Heard in this court at the March term, 1911. Affirmed on remittitur. Opinion filed June 30, 1913.

ADLER & LEDERER and FRANCIS ADAMS, for appellant; FRANCIS ADAMS and FRANCIS ADAMS, JR., of counsel.

ELMER D. BROTHERS and CHARLES M. THOMSON, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

Under date of November 1, 1905, the parties hereto entered into a written agreement to take effect May 1, 1906, and continue in force for two years, whereby the

Chicago—First District—June, 1913.    487

C. A. Stickney Co. v. Sears, Roebuck & Co., 181 Ill. App. 486.

appellee agreed to sell and deliver and the appellant agreed to buy and pay for during the life of the contract not less than 1,200 gas or gasoline engines from two and one-half horse power to fifteen horse power and 1,000 one horse power engines of certain specified designs, to be delivered by the appellee f. o. b. cars at St. Paul, Minn., at prices therein agreed upon. The tenth clause of the contract was as follows:

"Tenth. In consideration of the order contained herein, the manufacturer agrees not to sell directly or indirectly any of his goods to any other so called catalogue house."

On January 26, 1906, the following addition was made to the said contract:

"If for any reason, not the fault of the manufacturer, the purchaser wishes to countermand the order contained herein for 1,200 engines of sizes 2½ H. P. and larger, then it is agreed that he will pay to the manufacturer as liquidated damages an amount equal to ten ($10.00) dollars for each engine order so countermanded."

In a suit to recover damages for a breach of the contract in failing to take the number of engines contracted for, the appellee secured a verdict for $10,-076.87. A new trial being granted the result of the second trial was a verdict for $13,750 against the appellant. A new trial was again allowed and on the third trial of the case the jury assessed the appellee's damages at $16,000. On this verdict the court entered judgment and a reversal thereof is sought by this appeal.

In regard to the first contention, that a material averment of the declaration in relation to appellant neither taking the remaining number of engines of two and one-half horse power or larger, nor giving shipping orders therefor, was not proven, we think that, while there was no direct evidence offered tending to prove the said averment, a fair and reasonable inference arises from a consideration of all the evi-

488    APPELLATE COURTS OF ILLINOIS.

C. A. Stickney Co. v. Sears, Roebuck & Co., 181 Ill. App. 486.

dence, especially the correspondence and the conduct of the parties at and about the time of the expiration of the contract, tending strongly to support the said averment and sufficient to sustain the same.

It is next urged that the appellee violated its contract in the sale of its engines (41 in all), at different times during the life of the contract, to the Shaw-Wells Co., a "so-called catalogue house" at Spokane, Washington. That it sold the said engines to the said company the appellee admitted, but contended that the said Shaw-Wells Co. was not a "so-called catalogue house" within the meaning of the said contract; or if it was, the said appellee knew of the said sales and not objecting thereto thereby waived the said provision of the contract. The court instructed the jury, in substance, that if the appellee sold said engines to other "so-called catalogue houses" during the life of the contract, it could not recover unless the jury further found from the preponderance of the evidence that the appellant knew of the same and made no objections thereto, thereby waiving the said provision of the contract. On the evidence, under the instructions of the court, the jury must have found that the Shaw-Wells Co. was not a catalogue house within the meaning of the contract, or that the appellant knew of the said sales and, not objecting thereto, waived the same. Both parties present strong arguments on the question whether or not the Shaw-Wells Co. was a catalogue house within the meaning of the contract. The appellant thinks the evidence overwhelming in its behalf on this question. It may be; but after a careful study of the evidence we must confess our inability to form any confident convictions on either side of this question. On this ground we might refuse to disturb the verdict of the jury on this issue. We shall, however, assume for the moment that Shaw-Wells Co. was a catalogue house and consider the question of waiver. H. L. Knight represented the appellant in the transaction in

question and executed the said contract on its behalf; and called by the appellant as a witness he gave the following testimony, quoting from the record:

"Q.  Did you at any time, while you were in the employ of Sears, Roebuck & Company, have in your possession a catalogue of Shaw-Wells & Company? A. Only as handed to me by Mr. Stickney or Mr. Bevan, and by them carried away.

Q.  Do you know whether or not they handed you any such catalogue?  A. They showed me a catalogue, yes sir.

Q.  When?  A. I don't know when it was; it was in the early part of our contract with them.  I would say in 1906—yes sir, 1906.

Q.  What was said in regard to the catalogue at that time?  A. He told me that he was selling Shaw-Wells & Company.

Q.  Yes, and what did you say?  A. I don't remember what I said.  There was no occasion for me to say anything that I know of.

Q.  Did you know anything about Shaw-Wells & Company at that time?  A. I had met Mr. Shaw, he had been brought to my office and introduced to me by Mr. Stickney.

Q.  Did you know at that time that they were engaged in the mail order business?  A. They were not.

Q.  At that time?  A. Not to my knowledge."

Both parties took the deposition of F. H. Shaw, the general manager of the Shaw-Wells Co. during the time in question.  He testified:

"The Shaw-Wells Company has issued a catalogue in connection with its business.  The Shaw-Wells Company have issued two catalogues.  The first one came out about the first of April, 1907, and the second and last one about August, 1908.  Up to January 1st, 1907, the business of the Shaw-Wells Company was and had been for some years exclusively wholesale, traveling men on the roads catering to retail dealers.  On January 1st, 1907, we began retailing as well as wholesaling and during March issued a catalogue which we be-

490          APPELLATE COURTS OF ILLINOIS.

C. A. Stickney Co. v. Sears, Roebuck & Co., 181 Ill. App. 486.

gan to mail to dealers, blacksmiths, livery men and consumers on the first of April, 1907, and since that date we have continued to conduct our business on the same line as last described;''

Also that about 20 per cent. of their business during that time was secured through the mails. The 1907 Shaw-Wells catalogue was introduced in evidence. It is evident that Mr. Knight was mistaken about seeing this catalogue in 1906. He undoubtedly saw it in 1907. Then either Stickney or Bevan, both of the appellee company, told him the appellee was selling engines to Shaw-Wells Co., and he made no objection thereto. It is therefore clear that the appellant knew of the said sales during the life of said contract and without objection continued taking the engines under the terms of the contract. The statement of Knight that he did not at that time know that the Shaw-Wells Co. was engaged in the mail order business cannot be of much avail to the appellant. The evidence is uncontroverted that in the trade ''catalogue house'' and ''mail order house'' are synonomous terms. Knight, representing the appellant, was an experienced man in the business. When the Shaw-Wells Co. 1907 catalogue was presented to him and he was told that the appellee was selling engines to that company, the jury might properly conclude that he then knew that the appellee was selling engines to another catalogue house in violation of a clause of the contract. But if the said catalogue did not prove to a man of Knight's experience and knowledge in the business that Shaw-Wells Co. was a catalogue house, then it being the principal evidence offered by appellant to prove to the jury that Shaw-Wells Co. was what the trade termed a catalogue house, it might be a fair and reasonable conclusion of the jury that in fact Shaw-Wells Co. was not a catalogue house, especially in view of other evidence to that effect and when it was conclusively shown that all houses issuing a catalogue

were not considered catalogue houses; for instance Marshall Field & Co., which, it appears, issues a catalogue as to some of its departments. We conclude that there is sufficient evidence in the record, without making further reference thereto in detail, to preclude us from holding that the verdict in this respect was clearly and manifestly against the weight of the evidence.

The evidence shows that some three or four sales of engines were made by the appellee subsequent to the time that the appellant knew of sales to Shaw-Wells Co., and its counsel claim that "The condition in the tenth clause of the contract is continuous and applies not merely to a single breach, but to all which may occur, so that a waiver of one breach of the condition does not preclude appellant from taking advantage of subsequent breaches," and cite many authorities to the effect that a covenant against subletting in a lease is continuous and a waiver thereof only discharges the particular breach. We are not inclined to apply this rule in the case at bar. Knight, testifying in behalf of appellant, did not say that appellee stated it had made a sale, but his language was that it "was selling Shaw-Wells & Company"—that would mean, it seems to us, taken in connection with the listing of the engines manufactured by the appellee in the Shaw-Wells Co. catalogue, shown to the appellant at the time, a statement in relation to future transactions, as well as in the present, and the appellant not objecting thereto, would not be heard to say, after the sales were made, that it only waived as to those that had been made at the time of receiving said notice.

The appellant insists that the damages are excessive. With this contention we agree. The appellee claims the measure of damages is "the difference between the contract price and what it would have cost appellee in material and labor to build, equip and

deliver f. o. b. cars at St. Paul the engines not bought and paid for under the contract,'' and on that theory it obtained the judgment appealed from.

On May 1, 1908, the appellee sent to the appellant the following:

"St. Paul, Minn., May 1, 1908.
*Sears, Roebuck & Co.,*
  We have this day debited your account as follows:
    Balance due on contract:
  722 Horizontal Engines at $10.00......$7,220.00
  653 1 h. p. Engines at $43.75............ 2,856.87

$10,076.87''

Soon, thereafter, on May 5th, Mr. Stickney of the appellee company, had conferences with Messrs. Rosenwald, Loeb and others of the appellant Company at Chicago, and stated that ten dollars was stipulated in the contract as the liquidated damages for each of the larger engines not taken, and that he figured a profit of ten per cent. on the one horse power engines (listed at $43.75), which made the amount due and owing the appellee $10,076.87. The appellee takes the position that the ten dollars per engine was only as to orders for engines countermanded, and as no order was countermanded the appellee was not bound thereby, but was entitled to damages under the rule heretofore quoted. We think it very clear that both parties used and understood the word "countermand" in the additional contract, not to mean a revocation of some previous shipping order, but to refer to the number of larger engines, if any, not taken by the appellant under the contract.

It is also earnestly contended by appellee that its said statement was simply a proposition for settlement. The appellant was evidently attempting to escape the liability for the breach of the contract by its failure to take the number of engines agreed upon, and on April 15th wrote to appellee that on its part "on

April the 30th, when this contract expires, there will be no further obligations.''

We think the situation might naturally have led into an offer of settlement, but the communication of May 1, 1908—''We have this day debited your account'' with $10,076.87—appears in no sense as an offer of settlement, but a positive declaration of a fixed amount claimed to be due appellee. At the interview of May 5th, heretofore referred to, Mr. Stickney, quoting from his own testimony, stated to Mr. Rosenwald, in reference to the engines not taken and the amount claimed: ''they had failed to order or take them, and that our agreement was that on the horizontal engines we were to receive ten dollars an engine.'' On a consideration of all the evidence we think that the appellee's position that the bill rendered appellant was an offer of settlement is untenable.

The time of the contract was not extended, and while the record is by no means free from error, we are of the opinion that on the record the appellee was entitled to judgment against the appellant for $10,076.87, and the only error we should hold reversible is the excessive amount of the damages for which judgment was entered. If the appellee files a remittitur of $5,923.13, making the judgment $10,076.87, within ten days, the judgment will be affirmed and the costs taxed against appellee; otherwise the judgment will be reversed and the cause remanded.

*Affirmed on remittitur.*

*Remittitur* filed and judgment affirmed July 3, 1913.